UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSMERLEY HERNANDEZ
HERNANDEZ,

        Petitioner,

v.                                    Case No.  2:26-cv-1512-JES-DNF

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY,
et al.,

        Respondents.
_____/

**OPINION AND ORDER**

Petitioner Osmerley Hernandez-Hernandez, an immigration detainee, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 1). Respondents have filed a response and a supplemental response to the petition. (Doc. 7; Doc. 14). Hernandez-Hernandez has filed a reply. (Doc. 11). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.   Background**

Hernandez-Hernandez, a citizen of Cuba, entered the United States on March 1, 2016. (Doc. 7 at 2). He was ordered removed from the United States to Cuba on July 14, 2016. (Id.) He was released from detention under an order of supervision on August 1, 2016. On October 7, 2025, Hernandez-Hernandez was convicted of misdemeanor battery and sentenced to twelve months' probation.

(Id.)   Thereafter, his order of supervision was revoked, and he was taken into the custody of Immigration and Customs Enforcement (ICE).   (Id. at 3).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).   The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Hernandez-Hernandez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at

2

701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days.  Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must produce sufficient evidence to show otherwise. Id.[1]

Here, there is no dispute that Hernandez-Hernandez has been in ICE custody for more than six months following his latest detention.  On May 18, 2026, Respondents argued that Hernandez-Hernandez was not entitled to release because his removal to Mexico was imminent.  (Doc. 7).  Thus, a month after Respondents' argument, the Court directed them to update the Court with progress made on removal by "describ[ing] in detail all efforts made to secure [Hernandez-Hernandez's] removal."  (Doc. 13).  Respondents direct the Court to their initial response but admit that Hernandez-Hernandez has not been removed.  (Doc. 14 at 2).  They also note that "emails to agency counsel from the undersigned

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

3

regarding the Court's request for supplemental briefing have gone unacknowledged and unanswered." (Id.)

To support their initial response, the government offered the declaration of Deportation Officer Darion Hernandez. (Doc. 8). Officer Hernandez generally asserted that there was a significant likelihood of removal in the reasonably foreseeable future and stated:

> On January 26, 2026, Respondent was detainee at ERO El Paso Camp in order to attempt to third country removal to Mexico. On January 26, 2026, the respondent underwent a medical evaluation, and subsequently by April 2026 was returned to Florida.
>
> ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future to third country removal of Mexico. The respondent has been nominated for the next available flight to the southwest border of the Untied States for removal to Mexico (3rd Country Removal).

(Doc. 8 at 2).

Notably, Respondents do not allege that Mexico has agreed to accept Hernandez-Hernandez or that ICE even had an approved plan for removal to Mexico that he thwarted in some way. Nor do they assert that Mexico was willing to accept Hernandez-Hernandez (notwithstanding his criminal record). In fact, Respondents provide no evidence suggesting that ICE actually communicated with Mexico specifically regarding Hernandez-Hernandez. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. The Court's confidence

4

in Hernandez-Hernandez's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents admit they do not have. See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents have had more than nine months since his present detention to remove Hernandez-Hernandez and are still unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country. Thus, based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that he will be removed in the reasonably foreseeable future. And while there may be some possibility that Mexico will eventually accept him, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at *4 (emphasis added, quotations omitted). "[T]he Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process." Romero v. Noem, No. 2:26-cv-352-

5

KCD-NPM, 2026 WL 820499, at * 3) (M.D. Fla. May 25, 2026) (citing Zadvydas, 533 U.S. at 679).

Therefore, Hernandez-Hernandez is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If he fails to comply with the conditions of release, Hernandez-Hernandez may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Hernandez-Hernandez to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.    Osmerly Hernandez-Hernandez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Hernandez-Hernandez within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 23, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7